1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUDITH JIMENEZ, | ) NO. EDCV 08-01298 SS |
| Plaintiff, | ) |
| | ) **MEMORANDUM DECISION AND ORDER** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**INTRODUCTION**

Judith Jimenez ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Supplemental Security Income ("SSI").  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  This matter is before the Court on the parties' Joint Stipulation ("Jt. Stip.") filed on July 14, 2009.  For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on February 11, 2004. (AR 116-118). Plaintiff alleged a disability onset date of July 1, 2003. (AR 116). The Commissioner denied benefits on May 3, 2004. (AR 103-107). Plaintiff submitted a request for reconsideration on June 16, 2004. (AR 109). The Commissioner denied Plaintiff's request for reconsideration on October 14, 2004. (AR 102). Plaintiff requested a hearing before an administrative law judge ("ALJ") on October 25, 2004. (AR 66; 110-11).

Plaintiff's hearing proceeded before ALJ F. Keith Varni on April 11, 2007. (AR 68-88). ALJ Varni issued an unfavorable decision on April 24, 2007. (AR 40-47). Plaintiff requested review by the Appeals Council on June 12, 2007. (AR 35). The Appeals Council remanded the case on July 30, 2007. (AR 32-34).[1] Plaintiff's new hearing proceeded before ALJ Varni on April 3, 2008. (AR 89-100). ALJ Varni issued an unfavorable decision on May 10, 2008. (AR 13-23). Plaintiff requested review by the Appeals Council on June 4, 2008. (AR 8). The Appeals Council denied Plaintiff's request for review on July 21, 2008. (AR 5-7). Plaintiff commenced the instant action on September 19, 2008.

\\
\\
\\
\\

---

[1] The Appeals Council remanded the case because the ALJ failed to address evidence indicating Plaintiff's heart condition rendered her unable to perform sedentary work on a consistent basis. (AR 33).

**FACTUAL HISTORY**

A.   <u>Generally</u>

Plaintiff was born on March 6, 1969.  (AR 116).  Plaintiff claims disability as a result of "[irregular] heart beat, depression, stress, chest pain, high [blood sugar] levels, blur[r]ed vision, [weakness], . . . enlarged liver, [and] enlarge[d] heart."  (AR 132).

B.   <u>Relevant Medical History</u>

   1.   **Mental Health Condition**

James A. Grishom, M.F.T.[2], R.N.[3], assessed Plaintiff on April 29, 2004.  (AR 350-51).  Mr. Grishom diagnosed Plaintiff with non-specific depressive disorder and post-traumatic stress disorder.  (AR 350).  Mr. Grishom noted that Plaintiff had mild suicidal ideation.  (<u>Id.</u>).
\\
\\
\\
\\
\\
\\
\\
\\

---

[2]   A M.F.T. is a Marriage and Family Therapist.

[3]   A R.N. is a Registered Nurse.

On August 11, 2004, J.N. Allison, M.D., indicated that Plaintiff reported "seeing people who are not there [and] hearing noises when nobody is there." (AR 348). Dr. Allison noted that Plaintiff experienced "crying spells." (Id.). Plaintiff was prescribed twenty milligrams of Lexapro[4], zero to five milligrams of Risperdal[5] and fifty milligrams of Trazodone[6]. (Id.)

On September 8, 2004, Dr. Allison found that Plaintiff "remain[ed] depressed." (Id.). Dr. Allison indicated that Plaintiff suffered from insomnia. (Id.) Dr. Allison continued Plaintiff on the same dosage of Lexapro and Risperdal, but increased the Trazodone to one hundred milligrams. (AR 348).

On October 6, 2004, Dr. Allison indicated that Plaintiff "state[d] [she is] less depressed" and noted that Plaintiff's "crying spells" had become less frequent. (AR 347). Dr. Allison prescribed Plaintiff thirty milligrams of Lexapro and the same dosages of Risperdal and Trazodone. (Id.).

---

[4] Lexapro is a trade name for Escitalopram, which is prescribed to treat depression and generalized anxiety disorder. See http://www.nlm.nih.gov/medlineplus/druginfo/meds/a603005.html (last accessed July 30, 2009).

[5] Risperdal is a trade name for Risperidone, which is an anti-psychotic drug prescribed to treat symptoms of schizophrenia, mania and other behavioral problems. See http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694015.html (last accessed July 30, 2009).

[6] Trazodone is prescribed to treat depression. See http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html (last accessed July 30, 2009).

1    Records on October 20, 2004 and November 10, 2004 indicate that
2    Plaintiff did not appear for her psychiatric appointments.  (AR 346).
3    Dr. Allison indicated that Plaintiff's case was "closed" on December 23,
4    2004.  (Id.).

6    John Lavey, L.C.S.W.[7], treated Plaintiff on February 5, 2007.  (AR
7    336-38).  Mr. Lavey found that Plaintiff suffered from paranoia, mood
8    swings, and suicidal ideation.  (AR 337).  Mr. Lavey indicated
9    Plaintiff's current mood was "depressed."  (Id.).  Mr. Lavey found that
10   Plaintiff had a Global Assessment of Functioning ("GAF") of 50.  (AR
11   336).  Mr. Lavey diagnosed Plaintiff with non-specific depressive
12   disorder and post-traumatic stress disorder.  (AR 338).

### 2.  Consultative Psychiatric Evaluation

Kent Jordan, M.D., a Diplomate of the American Board of Psychiatry and Neurology, evaluated Plaintiff for the Disability Determination Service ("DDS") on December 1, 2007.  (AR 314-20).  Dr. Jordan diagnosed Plaintiff with polysubstance abuse and dependence, amphetamine-induced auditory and visual hallucinations and personality disorder with manipulative trends.  (AR 318).  Dr. Jordan concluded that "[Plaintiff] cannot responsibly handle funds because of her substance abuse history and also manipulative personality."  (AR 319).

\\
\\
\\

---

[7] A L.C.S.W. is a Licensed Clinical Social Worker.

5

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[8] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
(3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part

---

[8] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1520, 416.910.

6

          404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 23, 2004. (AR 15).

At step two, the ALJ found that Plaintiff suffered from the following severe combination of impairments: insulin-dependent diabetes mellitus, hypertension with related history of enlarged heart and obesity. (AR 15). The ALJ found that:

> [Plaintiff's] medically determinable mental impairments of polysubstance abuse and dependence with personality disorder with manipulative trends, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere.

(AR 16)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.).

At step four, the ALJ found that Plaintiff had no past relevant work and thus whether Plaintiff would be capable of performing past work could not be determined. (AR 22).

At step five, the ALJ determined that Plaintiff could perform the jobs of hand packager, assembler and table worker. (AR 22-23). The ALJ posed the following hypothetical to vocational expert ("VE") Joseph Mooney:

> [C]onsider a person of [Plaintiff's] background, her age, education and work experience and I would like you to consider her residual functional capacity ("RFC") that was assessed by the specialist in internal medicine who saw [Plaintiff] on December 12 of 2007 . . . [c]onsidering that assessment of functional capacity and reducing the work because of [Plaintiff's] basic lack of past work, to work which is simple, routine, repetitive, and non-public.

(AR 97-98).

The VE responded that Plaintiff could perform "a broad range of simple jobs like hand packagers . . . a variety of different types of assemblers . . . [and] table workers . . . ."  (AR 98).

The ALJ found the following RFC for Plaintiff:

> [T]o perform medium work as defined in 20 CFR 416.967(c) except [Plaintiff] is limited to frequent reaching in all directions, handling, fingering, feeling, pushing, and pulling, bilaterally, and she is limited to frequent balancing, stooping, crouching, and climbing ramps and stairs. [Plaintiff] is limited to occasional kneeling,

9

crawling, and climbing ladders, ropes, and scaffolds. [Plaintiff] is able to perform frequent work at unprotected heights, operating a motor vehicle, and vibrations, but she is limited to occasional work around moving mechanical parts, dusts, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. [Plaintiff] is limited to work in moderate (office) noise. [Plaintiff] is able to perform routine, repetitive, nonpublic work tasks.

(AR 16).

Based on this RFC and the VE's response to the hypothetical, the ALJ concluded that Plaintiff was not disabled because she could perform the work as a hand packager, assembler and table worker. (AR 22-23).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports

a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**DISCUSSION**

**A.    The ALJ Erred In His Evaluation Of Plaintiff's Mental Impairment**

Plaintiff contends that the ALJ erred because he "failed to consider the severity of [Plaintiff's] mental impairment, which clearly indicates significant ramifications for [Plaintiff's] ability to work." (Jt. Stip. at 13). Plaintiff asserts that the record contains "evidence of a mental impairment that has more than a minimal effect on [Plaintiff's] ability to do basic work activities." (Jt. Stip. at 14). This Court agrees.

The ALJ noted the following regarding Plaintiff's mental impairments:

> [Plaintiff's] medically determinable mental impairments of polysubstance abuse and dependence with personality disorder with manipulative trends, considered singly and in combination, do not cause more than minimal limitation in

11

[Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere.

(AR 16)

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(stating that the step two inquiry is a de minimis screening device to dispose of groundless claims)(quoting Smolen, 80 F.3d at 1290).  An impairment is not severe only if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individuals ability to work."  Smolen, 80 F.3d at 1290 (internal quotations and citations omitted).

The ALJ here applied more than a de minimis test when he determined that Plaintiff's mental impairment was not severe. Moreover, he failed to follow the Secretary's own regulations governing the evaluation of mental impairments, as described below.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.[9]

---

[9] These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed assessment. Social Security Ruling 96-8P, 1996 WL 374184 at * 4.

Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998)(citing 20 C.F.R. § 416.920a)(per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding he plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

The regulations describe an impairment as follows:

> A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs,

13

symptoms, and laboratory findings, not only by [a plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1-2).

Here, sufficient evidence existed to satisfy the de minimis test. Mr. Grishom diagnosed Plaintiff with depressive disorder and post-traumatic stress disorder. (AR 350). Dr. Allison noted that Plaintiff complained of "seeing people who are not there [and] hearing noises when nobody is there" and suffered from "crying spells." (AR 348). Dr. Allison also prescribed Plaintiff with Lexapro, Trazodone and Risperdal, medications for the treatment of mental disorders. (Id.). Mr. Lavey found that Plaintiff suffered from paranoia, mood swings, and suicidal ideation. (AR 337). Mr. Lavey assessed Plaintiff with a Global Assessment of Functioning ("GAF") of 50 and diagnosed her with non-specific depressive disorder and post-traumatic stress disorder. (AR 336-38). Dr. Jordan, the consultative psychiatrist, indicated that Plaintiffs "manipulative personality" made her incapable of managing finances. (AR 319).

Plaintiff's medical records indicate that she suffered from a mental impairment that interfered with and affected her ability to function. Plaintiff's mental impairment is not "a slight abnormality that has no more than a minimal effect on an individuals ability to

work." Smolen, 80 F.3d at 1290 (internal quotations and citations omitted). The ALJ's conclusion at step-two of the evaluation process was erroneous and in conflict with the record. Moreover, it cannot be considered harmless as it impacted the remainder of the five-step process. Remand is required.

**B.   Because The ALJ Erred At Step Two, His Finding That Plaintiff Can Perform The Jobs Of Hand Packager And Assembler Are Error**

Plaintiff argues that the ALJ erred by determining that Plaintiff could perform work that did not comport with her RFC. (Jt. Stip. at 3). Specifically, Plaintiff asserts that the Dictionary of Occupation Titles ("DOT") indicates that the occupation of hand packager and assembler require "an employee to [work in] a loud working environment." (Id.) (emphasis in original). Plaintiff contends that because the ALJ restricted Plaintiff to an environment with moderate noise, (AR 16), determining Plaintiff could perform work as a hand packager and assembler was error. (Jt. Stip. at 4). This Court agrees.

The ALJ assessed the following RFC for Plaintiff:

> [T]o perform medium work as defined in 20 CFR 416.967(c) except [Plaintiff] is limited to frequent reaching in all directions, handling, fingering, feeling, pushing, and pulling, bilaterally, and she is limited to frequent balancing, stooping, crouching, and climbing ramps and stairs. [Plaintiff] is limited to occasional kneeling, crawling, and climbing ladders, ropes, and scaffolds.

>  [Plaintiff] is able to perform frequent work at unprotected heights, operating a motor vehicle, and vibrations, but she is limited to occasional work around moving mechanical parts, dusts, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. [Plaintiff] is limited to work in moderate (office) noise. [Plaintiff] is able to perform routine, repetitive, nonpublic work tasks.

(AR 16).

Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). SSR 96-8p provides in relevant part: "RFC [residual functional capacity] is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (SSA July 2, 1996). At Step 5, "[a] 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id. at *2 (footnote omitted).

Here, the ALJ erroneously determined that Plaintiff did not have a severe mental impairment. This error affects the ALJ's RFC determination because the ALJ failed to include all of Plaintiff's severe impairments in the RFC assessment. As a result, Plaintiff's RFC assessment is incomplete and thus an inaccurate portrayal of her performance abilities and limitations.

Additionally, Plaintiff is correct that the ALJ incorrectly determined that she could perform the work of hand packager and assembler.  The DOT list the noise level for a hand packager and assembler, small products I as loud.  See DOT code 920.587-018; DOT code 706.684-022.

The DOT is part of the record for review in social security cases. The regulations provide that DOT classifications provide a rebuttable presumption regarding certain jobs and require that the ALJ take notice of DOT's classifications.  20 C.F.R. § 404.1566(d)(2)-(5)(e).  Here, the ALJ limited Plaintiff to a work environment with moderate noise.  (AR 16).  This contrasts with the definition of the occupation in the DOT. The ALJ did not offer an explanation as to the deviation.  Thus, the ALJ's determination that Plaintiff could work as a hand packager and assembler is not supported by substantial evidence.

Because the ALJ incorrectly found that Plaintiff did not have a severe mental impairment, Plaintiff's RFC is inaccurate.  Furthermore, the ALJ failed select occupations that comport with Plaintiff's established limitations.  If the ALJ departs from the DOT, the ALJ must definitively explain this departure.  See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).  Remand is required.

1  **C.    Because The ALJ Erred In His Evaluation of Plaintiff's Mental Impairment, His Hypothetical Was Erroneous**

Plaintiff contends that the ALJ erred by failing provide a complete hypothetical to the VE. (Jt. Stip. at 17). Specifically, Plaintiff notes that the ALJ's hypothetical "did not include [Plaintiff's] episodes of decompensation . . . ." (Id.). This Court agrees.

In order for the vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations." Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995). However, the ALJ is not required to include limitations for which there was no evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (ALJ not bound to accept as true the restrictions set forth in hypothetical if they were not supported by substantial evidence).

The ALJ posed the following hypothetical to the VE:

> [C]onsider a person of [Plaintiff's] background, her age, education and work experience and I would like you to consider her residual functional capacity ("RFC") that was assessed by the specialist in internal medicine who saw [Plaintiff] on December 12 of 2007 . . . [c]onsidering that assessment of functional capacity and reducing the work

```
        because of [Plaintiff's] basic lack of past work, to work
        which is simple, routine, repetitive, and non-public.
```

(AR 97-98).

Here, the ALJ erroneously concluded that Plaintiff did not have a severe mental impairment. Accordingly, ALJ did not set forth any limitations stemming from Plaintiff's mental impairment in his hypothetical. Thus, the ALJ's hypothetical failed to "consider all of the claimant's limitations." Andrews, 53 F.3d at 1044. Remand is necessary.

## CONCLUSION

The ALJ erred at his step-two evaluation of Plaintiff's mental impairment. The record contains sufficient evidence to satisfy the de minimis test for severity. Because the ALJ did not properly consider this evidence, the ALJ's hypothetical was incomplete and his RFC assessment was inaccurate.

\\
\\
\\
\\
\\
\\
\\
\\
\\

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 6, 2009.

/S/

---

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[10] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."